Boeing-, J.,
dissenting:
I dissent from the opinion read. I think the petitioner is entitled to recover for the 2,000 barrels of rosin, &e., specified as the third item in the statement of facts.
When the rosin was captured in March, 1862, North Carolina had been declared to be in a state of rebellion. But in that and the other disloyal States there were many loyal persons, who were of right entitled to the protection of the Government in person and property as the return due to allegiance ,* for they were citizens of the United States, and no action of their States could exclude them from that citizenship or the rights consequent on it. In these circumstances the Government adopted *384 the policy of restoring to such loyal persons the proceeds of their captured property paid into the Treasury.
And this policy grew out of the circumstances stated. It was not created by the Act March 12,1863, for that act was only the remedy and the means of carrying into effect the policy. Now certainly this case is within that policy, for the owner of the property captured was loyal aud its proceeds are in the Treasury, and the only objection to the recovery is that the property was captured before the Act July 17,1862, or the Act March 12, 1863, was passed. But remedial statutes may be and are extended to transactions anterior to their enactment, and where the case is within the policy but not within the letter of the statute, that may be so extended by construction as to bring the case within the equity of the statute. The old example of this is that given by Mr. Dwarris, of the case of a devise of a jointure in lands, made long before lands were devisable in England, and when of course such a devise had no legal effect. But after lands were made devisable in England by the statute of Henry YIII, this devise of the joint-ure was supported under that statute as being within its equity. ' And the decision has been held authoritative, and ever since followed in text-books and decisions, and I think this case, in which the property was captured from a loyal citizen and its proceeds paid into the Treasury, is within the equity of the statute of 12th March, 1863, and the policy it was intended to carry out.
All previous statutes related to crime and the property of criminals, and were not in pari materia with the third section of the Act March 12, 1863, which related exclusively to loyal owners who had kept their loyalty in disloyal States. And I think the admitted policy of the Government precludes the inference that the purpose of its legislation was to secure to such loyal owners their property captured after, and to deprive them of their property captured before, 12th March, 1863.